OPINION OF THE COURT
Martin Marcus, J.
In this case, the petitioner moves to vacate a warrant charging him with violating the conditions of his postrelease supervision. He claims that because postrelease supervision was not imposed by the judge who sentenced him, but instead by the New York State Department of Correctional Services, the conditions of his postrelease supervision are void. The People oppose the petitioner’s motion, claiming that the term was imposed, not by the Department, but by the automatic operation of law. For the reasons set forth below, the petition is granted.
On May 12, 2004, in the Supreme Court, Kings County, a hearing was conducted in which the pétitioner, who had previously pleaded guilty to criminal possession of a weapon in the third degree and been sentenced to five years’ probation, was found guilty of violating the terms of that probation.[1] After that finding, the petitioner asked the court to reinstate him “to a stricter type of probation,” and for “one more chance,” but the court sentenced the petitioner to “the two years they offered you before the hearing.” In response to a question from the clerk, the court reiterated, “On the CPW it’s two years.” Although Penal Law § 70.45 provides that such a , entence also “includes” a term of postrelease supervision, the court did not announce that it was imposing such a term, and the commitment sheet did not contain a notation that such a term was included in the petitioner’s sentence.[2]
After the petitioner began serving his prison sentence, the Department, applying Penal Law § 70.45, administratively *362 imposed upon the petitioner a period of three years’ postrelease supervision. On November 2, 2005, at the conclusion of his prison sentence, the petitioner was presented with a form entitled “Certificate of Release to Parole Supervision; Determinate — Post-Release Supervision,” which set forth the conditions of postrelease supervision and stated that the period of that supervision was to be three years. The petitioner signed the form, which included the acknowledgment that, “I, Andre WHITE . . . voluntarily accept Parole Post-Release Supervision.” The next day, the petitioner was released to the supervision of the Division of Parole with the maximum expiration date of his supervision set at November 3, 2008. The petitioner was declared to be in delinquency of the conditions of his supervision as of April 8, 2006 and a warrant for his arrest was issued on August 24, 2006. The warrant was executed two days later, and the petitioner now remains held on that warrant.
Several questions arise when, as in this case, no mention is made of postrelease supervision, either by the sentencing court or in the commitment order. The first is whether the sentence nonetheless includes a period of such supervision by operation of law. The second is whether, if the law operates to impose a period of supervision in such circumstances, it does so constitutionally. The third is whether a person made subject to post-release supervision in such circumstances may challenge the constitutionality of its application to him only after he is released subject to its conditions and is charged with violating one or more of those conditions.
At least when the law specifies a particular period of post-release supervision, the answer to the first question is clear. Subdivision (1) of Penal Law § 70.45 provides that “[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision.” According to subdivision (5) (a) of that section, the “period of post-release supervision shall commence upon the person’s release from imprisonment to supervision by the division of parole.”
In People v Sparber (34 AD3d 265 [1st Dept 2006]), the Court rejected the defendant’s argument that the failure of the sentencing court to mention a period of postrelease supervision in announcing the defendant’s sentence rendered the inclusion of such a period in the commitment sheet a nullity. The First Department reasoned that
*363 “[t]he Penal Law does not merely direct or require a court to impose PRS when imposing a determinate sentence; instead, it provides that ‘Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision’ (Penal Law § 70.45 [1] . . . ), which, in defendant’s situation, is precisely five years (Penal Law § 70.45 [1]).” CId. at 265.)
Thus, the Court concluded that, “even though the court’s oral sentence was silent as to PRS, it necessarily included a five-year term thereof’ (id.). The First Department has since repeated that holding in People v Thomas (35 AD3d 192 [1st Dept 2006]) and People v Lingle (34 AD3d 287, 289 [1st Dept 2006]).[3]
This raises the next question, whether the three-year period of postrelease supervision was constitutionally imposed in this case. The analysis begins with Hill v United States ex rel. Wampler (298 US 460 [1936]), in which a United States District Court Judge imposed a sentence by stating that the defendant was to serve 18 months in prison and to pay a fine of $5,000. After the sentence was imposed, the court clerk, following the local practice, added to the commitment sheet a condition not pronounced by the court: that the defendant remain incarcerated until the fine was paid. The Supreme Court held that the condition added by the clerk was not part of the sentence, and was void because it had not been pronounced by the sentencing court. Speaking in unambiguous terms, the Court stated that, “[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court. . .. Until corrected in a direct proceeding, it says what it was meant to say, and this by an irrebuttable presumption.” (Id. at 464.)
In Earley v Murray (451 F3d 71 [2d Cir 2006]), the Second Circuit applied Wampler to the case of a state prisoner who applied for a writ of habeas corpus after learning, a year after he was sentenced, that the Department of Correctional Services had imposed a period of postrelease supervision not announced by the sentencing court and not included in his commitment or *364 der.[4] The court held that, because the term of postrelease supervision had not been ordered by the sentencing court, but was only later imposed by the Department of Correctional Services, it was invalid. The court reasoned that Wampler did not turn on the fact that the condition added by the clerk was discretionary, rather than mandatory. Instead, it found that the Supreme Court had “articulate[d] a broader holding: The judgment of the court establishes a defendant’s sentence, and that sentence may not be increased by an administrator’s amendment.” (Id. at 75.) Thus, “[t]he only cognizable sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect” and violates due process. (Id. at 75, 76 n 1.)
When the State moved for reargument in Earley, the Second Circuit rejected the notion that the statutorily mandated nature of postrelease supervision rendered a period of such supervision “judicially-imposed,” even though it had not been orally announced at sentence. (Earley v Murray, 462 F3d 147, 148-149 [2d Cir 2006].) Reiterating that “[a] judicially-imposed sentence includes only those elements explicitly ordered by the sentencing judge” (id. at 149), the court adhered to its decision that “the inclusion of a five-year period of PRS in [the petitioner’s] sentence when that [provision] was not included in the sentence imposed at [his] sentencing hearing violated his rights under the Due Process Clause of the United States Constitution.” (Id. at 148.)
In no less unambiguous language than that of the Supreme Court in Wampler, the Second Circuit held it “immaterial” whether the sentence was altered by the Department or by “the operation of New York law,” and continued, “any additional penalty added to that sentence by another authority is invalid, regardless of its source, origin, or authority until the judge personally amends the sentence.” (Id. at 149.) Summing up, the court concluded that because “Wampler requires the custodial terms of sentences to be explicitly imposed by a judge, any practice to the contrary is simply unconstitutional and cannot be upheld.” (Id. at 150.)
*365 Since Earley was decided, the First Department has consistently rejected constitutional challenges to periods of post-release supervision that were not announced by the court at the time of sentence, but nonetheless appeared in a court document. In People v Lingle (34 AD3d 287, 289 [1st Dept 2006]), for example, the First Department found “no constitutional infirmity” in such a case, because “the [sentencing] court, acting through its court clerk, set forth the PUS provision in the commitment sheet, as well as on the worksheet, both of which the court signed personally.” (See also People v Thomas, supra [same as Lingle].) In People v Sparber (supra), the First Department reached the same conclusion, even in the absence of an act of the sentencing judge denoting approval of the unannounced term of the sentence. In that case, the court clerk had included a condition of postrelease supervision on the commitment sheet. Although there was no indication that the judge had signed the commitment sheet, the First Department found that the sentencing court itself, through the clerk’s “ministerial” act, had satisfied “any constitutional requirement that a sentence be entered upon the records of the court.” (34 AD3d at 265, quoting Wampler, 298 US at 464 [internal quotation marks omitted].)[5]
The act of the clerk in Sparber was ministerial, however, because Penal Law § 70.45 (1) “included” a period of post-release supervision in the defendant’s sentence, which, pursuant to Penal Law § 70.45 (2), was, for a person “in [Sparber’s] situation, . . . precisely five years.” (34 AD3d at 265.) As the First *366 Department emphasized in both People v Thomas (35 AD3d at 193) and People v Lingle (34 AD3d at 289), for those defendants, as for the defendant in Sparber, in determining the period of postrelease supervision, the sentencing judge had “no discretion available.”
The First Department made a similar observation in considering what effect to give to another provision that, although described by statute as “mandatory,” was not mentioned orally at the time of sentence. In People v Lemos (34 AD3d 343 [1st Dept 2006]), the defendant, on direct appeal from his judgment of conviction, argued that the mandatory surcharge and fees should be stricken from his sentence and the order of commitment because the sentencing court had not specifically pronounced imposition of those provisions. The First Department held that the defendant’s claim was foreclosed by his waiver of appeal, but it noted in dictum that, had it considered the merits of the defendant’s argument, it would have rejected that argument because “[t]he surcharge and fees in question are mandatory and contain no element of discretion.” (Id. at 344.)
While the courts have clearly held that a period of postrelease supervision is always “included” by law in a determinate sentence, still “the term of supervision to be imposed may vary depending on the degree of the crime and the defendant’s criminal record.” (People v Catu, 4 NY3d 242, 244 [2005], citing Penal Law § 70.45 [2].) In Sparber, Thomas and Lingle, that period was fixed by section 70.45 (2), which provided that “[t]he period of post-release supervision for a determinate sentence shall be five years . . . .” However, Penal Law § 70.45 (2), as it was in effect at the time of the petitioner’s crime, contained an exception and two provisos to that mandatory five-year term, applicable to persons sentenced as first violent felony offenders pursuant to Penal Law § 70.02, and not applicable to the defendants in those cases.
In this case, following the finding that he had violated the conditions of his probation, the petitioner was resentenced based upon his conviction of criminal possession of a weapon in the third degree (Penal Law § 265.02 [former (4)]), a class D violent felony. As applicable to him, Penal Law § 70.45 (2) provided, as an exception to the five-year period of postrelease supervision, that “whenever a determinate sentence of imprisonment is imposed pursuant to section 70.02 of this article upon a conviction for a class D or class E violent felony offense” the period of postrelease supervision “shall be three years,” and, as a pro *367 viso, that for such a sentence, “the court, at the time of sentence, may specify ... a shorter period of post-release supervision of not less than one and one-half years upon a conviction for a class D or class E violent felony offense.”[6]
In this case, then, the period of postrelease supervision, even if “included,” was not “precisely five years,” “precisely three years,” or any other period “precisely” set by the Penal Law. Instead, while the sentencing court could have imposed a period of three years, it also had discretion to impose a period of as little as IV2 years. Here, because the judge did not specify a period of postrelease supervision either orally, or in the order of commitment, it appears that the discretion was exercised not by him, but by the Department of Correctional Services, which set that period at the maximum. Thus, whether or not Earley is correct in extending the holding in Wampler to cases in which there is no discretion in the length of the period of postrelease supervision that must be imposed,[7] the provision at issue here included an element of discretion that makes Wampler clearly applicable.
*368 Because the sentence pronounced by the court in this case— both orally and in the commitment order — made no mention of a period of postrelease supervision, and because the sentence was not corrected, as Wampler said it could be, “in a direct proceeding” (298 US at 464),[8] the sentence announced by the court is “irrebuttablly] presum[ed]” to have “sa[id] what it was meant to say” (id.), and does not include a period of postrelease supervision. Accordingly, if the petitioner has not waived or failed to preserve the constitutional claim, the imposition of a period of postrelease supervision by the Department of Correctional Services must be declared void.
Thus, the third and final question must be addressed: has the petitioner waited too long to ask for this declaration? In People v Thomas (supra), the defendant sought the removal of the term of postrelease supervision from his commitment sheet because the sentencing court had not mentioned it. The Court found, however, that the defendant had validly waived his right to appeal, and that, because he was “asserting a procedural defect” that was encompassed by that valid waiver, it was unreviewable. (35 AD3d at 193.)[9] In this case, however, even if the petitioner did waive his right to appeal, the waiver could not have encompassed the claim he makes here, since not even the petitioner’s commitment sheet mentioned a period of postrelease supervision, and any waiver he entered into would have occurred long before the Department of Correctional Services informed him of the existence of this condition on his release.
The Court in Thomas also found the claim unreviewable because the defendant had not preserved it. The Court rejected the defendant’s argument that he had been incapable of preserving the claim, noting that, at the time the defendant entered his *369 plea of guilty, the lower court had mentioned that a term of postrelease supervision would be imposed, so that, when the court had omitted any mention of it at the time of sentence, the defendant could have brought the omission to the court’s attention. (See also People ex rel. Johnson v Warden, Rikers Is. Correctional Facility, 4 Misc 3d 535 [Sup Ct, Bronx County 2004] [denying, before Earley and Sparber were decided, habeas corpus relief to petitioner who sought to vacate parole warrant on ground that he had not been informed at the time of sentencing that he would be placed on postrelease supervision upon completion of his incarceration on the ground, inter alia, that petitioner had not preserved the issue for review].)[10]
In this case, however, the Division of Parole has not claimed that the petitioner was made aware of the period of postrelease supervision at any time before or at sentencing, and, thus, there is no basis to conclude that he was capable of preserving the claim in the context of the criminal proceeding. Moreover, he is not, like the defendant in Thomas, a person directly appealing from a judgment of conviction, and is, instead, a petitioner seeking to have a warrant vacated based upon an alleged violation of the conditions of supervised release. In such circumstances, it would be unreasonable to hold that he has not preserved the claim because he failed to raise it whenever the Department of Correctional Services first informed him that his release from prison would be conditional,[11] or even when he signed the docu *370 ment informing him of those conditions, since at both of those points he was without counsel.
In People ex rel. Caban v New York State Div. of Parole (Sup Ct, NY County, Nov. 11, 2006, Ambrecht, J., Index No. 403772/ 06), the court denied the petition on the ground that the petitioner had not brought his application in the right forum. Citing People v Evans (30 AD3d 1130 [1st Dept 2006]) and People v Keile (13 Misc 3d 1204[A], 2006 NY Slip Op 51684[U] [Sup Ct, NY County 2006]), the court found that “the appropriate avenue” for the defendant’s claim was a motion pursuant to CPL article 440 to either vacate the plea or to set aside the sentence. The court also noted that in Earley the defendant had properly preserved the issue by having filed a motion, albeit unsuccessfully, to set aside the sentence.[12]
Here, however, the petitioner asks neither that the judgment of his conviction be vacated, nor that the sentence the court imposed on him be set aside. Rather, he challenges an action taken by the Department of Correctional Services detaining him beyond the term of his sentence of imprisonment, based on alleged violations of the conditions of his release, which were imposed on him by the Department, rather than the court that sentenced him. As the court in People ex rel. Lewis v Warden, Otis Baum Correctional Ctr. (supra) determined, under CPLR 7002 (a),[13] a person who has been deprived of his liberty has the right to seek a determination of the lawfulness of that detention and a judge authorized to issue a writ of habeas corpus has the authority to *371 make that determination. (See also Matter of Waters v Dennison, 13 Misc 3d 1105 [Sup Ct, Bronx County 2006].)
There being no bar to hearing the petitioner’s claim now, the petition is hereby sustained, and the parole warrant is vacated.

. Before the hearing began, the petitioner asked the court, “If I take the hearing, I’m going to get more than two years?” The court replied, “I can’t tell you that. I don’t know. It depends on what happens at the hearing. You may want to testify, I don’t know.” The petitioner’s attorney then said, “He’ll have the hearing then, judge.” At the hearing, the People offered evidence that the petitioner had been convicted of two misdemeanors, criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), and possession of marihuana in the fifth degree (Penal Law § 221.10). The petitioner offered no evidence.

. A violation of any condition of supervision occurring during the period of postrelease supervision subjects the defendant “to a further period of imprisonment of at least six months and up to the balance of the remaining *362 period of post-release supervision, not to exceed five years.” (Penal Law § 70.45 [1].)

. See also People v Catu, 4 NY3d 242, 244 (2005) (noting that the imposition of a term of statutorily mandated postrelease supervision has “a definite, immediate and largely automatic effect on [a] defendant’s punishment”), quoting People v Ford, 86 NY2d 397, 403 (1995); Matter of Deal v Goord, 8 AD3d 769 (3d Dept 2004) (period of postrelease supervision automatically included in determinate sentence); People v Bracey, 24 AD3d 363, 364 (1st Dept 2005) (stating that postrelease supervision was “a direct consequence of a criminal conviction,” even though the defendant had not been advised of it).

. Earley first moved in state court to have the sentence amended to reflect the plea agreement by removing any term of supervision. After the state courts denied his motion and his appeal, Earley filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York. After the writ was denied, he appealed to the Second Circuit. (Earley v Murray, 451 F3d at 72.)

. See also United States v Pugliese (860 F2d 25, 30 [2d Cir 1988]) and United States v Cofield (233 F3d 405, 406-408 [6th Cir 2000]), cited by the First Department in Sparber, Thomas and Lingle. In Pugliese, the sentencing judge failed to indicate whether the term of incarceration it was imposing was to run concurrently or consecutively with a previously-imposed sentence. Where “there is genuine doubt concerning the oral pronouncement of sentence,” said the court, “[a] commitment order may properly serve the function of resolving ambiguities in the orally pronounced sentence! ].” (860 F2d at 30.) In Cofield, although the federal District Court Judge who sentenced the defendant had failed to mention the mandatory period of supervised release that would follow the defendant’s completion of his term of imprisonment, the written judgment and order of commitment did so. The Sixth Circuit determined that the sentencing court had merely made a “misstatement” by not orally pronouncing “what the guidelines required.” (233 F3d at 407.) Despite the broad language of the Supreme Court in Wampler, and without referring to that decision, the Sixth Circuit found that, to the extent that the District Court had committed error in omitting this provision, the error was nonconstitutional in nature and harmless. In any event, the court said, any error had been “corrected later the same day when the written judgment and commitment order was filed.” (Id.)

. Penal Law § 70.45 was amended by Laws of 2004 (eh 738, § 35 [eff Jan. 13, 2005]). As amended, subdivision (2) (e) of that section provides that the period of postrelease supervision “shall not be less than one and one-half years nor more than three years whenever a determinate sentence of imprisonment is imposed pursuant to subdivision three of section 70.02 of this article upon a conviction of a class D or class E violent felony offense.” Thus, for a defendant convicted of such a crime after the effective date, the sentencing judge must still impose a period of postrelease supervision, and may set that period between IV2 and 3 years.

. Earley is not, of course, binding on the New York Court of Appeals (see People v Kin Kan, 78 NY2d 54, 60 [1991] [“the interpretation of a Federal constitutional question by the lower Federal courts may serve as useful and persuasive authority for our Court while not binding us”]); and, if the Court of Appeals had rejected it explicitly or simply held otherwise, Earley would not be binding on the State’s lower courts. (People v Brown, 235 AD2d 344, 344-345 [1st Dept 1997] [“where there is a conflict between the decisional law of the Court of Appeals and that of an intermediate Federal appellate court, the ruling of the State Court of Appeals should be followed”].) Although the Court of Appeals has not ruled on this issue, some trial courts have on their own rejected Earley as it applies to cases in which the Penal Law specifies a particular period of postrelease supervision (see e.g., People ex rel. Hernandez v Warden, Rikers Is. Correctional Facility, 14 Misc 3d 1210[A], 2006 NY Slip Op 52477[U] [Sup Ct, Bronx County 2006]; People ex rel. Caban v New York State Div. of Parole, Sup Ct, NY County, Nov. 11, 2006, Ambrecht, J., Index No. 403772/06; Matter of Quinones v State of New York Dept. of Correctional Servs., 14 Misc 3d 390 [Sup Ct, Albany County 2006]); and others have accepted it (see, e.g., People ex rel. Lewis v Warden, Otis Baum Correctional Ctr., 14 Misc 3d 468 [Sup Ct, Bronx County 2006]).

. In Earley, the court stated that its ruling was not “intended to preclude the state from moving in the New York courts to modify [the petitioner’s] sentence to include the mandatory PRS term” (451 F3d at 77), but noted that it was unclear that any such motion could, at that point, be timely. (Id. at 77 n 2; see CPL 440.40 [1] [“At any time not more than one year after the entry of a judgment, the court in which it was entered may, upon motion of the people, set aside the sentence upon the ground that it was invalid as a matter of law”].)

. See also People v Lemos (34 AD3d 343 [1st Dept 2006]), in which the defendant argued that the mandatory surcharge and fees should be stricken from his sentence and the order of commitment because the sentencing court had not pronounced imposition of those provisions. The First Department found that Lemos had validly waived his right to appeal and that he had not properly preserved his claim for appellate review.

. In People v Bracey (supra), the defendant pleaded guilty to a violent felony offense and was promised a particular determinate sentence, without mention of a period of postrelease supervision. Although the court did announce at the time of sentence that it was imposing that period, and had thus alerted the defendant to it, the defendant did not move to vacate either the conviction or the sentence. The First Department nonetheless considered the issue on direct appeal, and set aside the conviction, holding that, “although defendant failed to preserve this issue for appeal, the error here is so fundamental as to require reversal.” (People v Bracey, 24 AD3d at 364; accord People v Armstrong, 31 AD3d 291 [1st Dept 2006].) In People v Cumberbatch (36 AD3d 157 [1st Dept 2006]), however, the Court rejected Bracey and Armstrong, and required that the issue be preserved.

. In any case, at least in the Third Department, it would appear that such a challenge would be unavailing. In Matter of Deal v Goord (8 AD3d 769 [3d Dept 2004]), decided before Earley, the Court dismissed a CPLR article 78 proceeding brought by a petitioner seeking to prohibit the Department of Correctional Services from imposing a period of postrelease supervision not announced by the sentencing court. The Third Department held that “since [the Department was] enforcing a statutorily-required part of petitioner’s sentence, [it had] not performed any judicial function, making prohibition an unavailable remedy.” (Id. at 770.)

. Of course, a defendant who employs a motion brought pursuant to CPL article 440 to challenge a period of postrelease supervision may be told that relief may not be sought by such means because the absence of the condition was evident on the record and should have been raised on direct appeal. (See, e.g., People v Lindsey, 302 AD2d 128 [3d Dept 2003]; People v Alcock, 188 Misc 2d 284 [Sup Ct, Kings County 2001].) Such a conclusion would not be warranted, however, if the petitioner only learned that he was being subjected to postrelease supervision after his appeal had been decided, or after his time to appeal had run.

. CPLR 7002 (a) states that a petition for a writ of habeas corpus may be made by “[a] person illegally imprisoned or otherwise restrained in his liberty within the state,” who may “inquire into the cause of such detention and for deliverance.” Under that provision, “[a] judge authorized to issue writs of habeas corpus having evidence, in a judicial proceeding before him, that any person is so detained shall, on his own initiative, issue a writ of habeas corpus for the relief of that person.” (CPLR 7002 [a].) A petition for a writ of habeas corpus may be made to “the supreme court in the judicial district in which the person is detained” (CPLR 7002 [b] [1]), or to “any justice of the supreme court” (CPLR 7002 [b] [3]).